Okay the next case on the docket is 525-0744 Stodden v. Coles County Board et al. Mr. DeVore, are you ready to proceed? I am. Okay, you may do so. This is the Court of Counsel. Your Honor, on behalf of Mr. Stodden and the declaratory judgment action he brought against the County Board and Mr. Becker. This one I believe is a little more straightforward than what we just went through regardless of where the court comes down. This is an issue to where my client brought the declaratory judgment, not asking for money, that's true, but he doesn't have to. He can ask the court to declare the rights and obligations of the party as a controversy. Obviously everyone thought there was a controversy because there was a cross motion for summary judgment filed by the defendant. And what it comes down to, it comes down to you have statutory requirements on the assessor. As a creature of statute, she has to do certain things as it relates to assessments. She can hire people, et cetera, but she has the obligation under the law to assess property. I don't think the facts are in dispute that there became a point in time to where the board and the office and rules committee made the decision that assessments needed to be done. And so they went through a process and ended up getting and receiving competing bids. And I'll use this language and I'll probably elevate a little tone on some of them because what I'm doing is using language that's completely inconsistent with hiring an employee. They got bids again. The assessor didn't get bids, the County Board and the official rules committee, office and rules committee got bids. They went and got these bids, the committee vetted the bids, they sent a recommendation to the County Board and the County Board ended up accepting the bid of Mr. Becker to do appraisals. Now they say there's no written contract. I'll throw that in while I'm here. Again, that's not a defense that carries the day to suggest that, hey, I could argue there is a contract. I don't think it's really significant because he submitted a bid, they accepted the bid. He became a 1099 contractor and then the record shows after some taxpayers started complaining, they converted him to W-2, gave him an oath of office and called him a deputy assessor. So is this a case of was he an employee versus an independent contractor? Not so much as, again, I don't think that label carries the day significantly, Justice. I think it comes down to who did the hiring, right? I think an independent contractor is a factor to be considered, but the County Board itself isn't the one that goes out and gets private people to do it. No, but she can do it with the advice and consent of the County Board. Yeah, she can hire whoever she wants. But the language of doing it with the advice and consent of the County Board is in the  It is true. So why is this not advice and consent? Because I think the record shows that she didn't go and seek out this to do it at all. She acquiesced. She acquiesced. I agree with you and I think if you read the Ashton B. Cook case, you have the same fact pattern where in Ashton B. Cook, the court said acquiescence doesn't get you there. At the time, the judge ruled on the summary judgment question. Is there any dispute that at that moment, at that moment in time, this was a deputy assessor? He wasn't there anymore at that time, sir.  At the time they ruled, for the actions that were complained of, was he not a deputy assessor? At that time? Yeah. He was gone. Had been gone for a long time. The status being complained of, he had the status of deputy assessor. If he isn't, right? They gave him the status of deputy assessor several months after they brought him on board. That is true. Did he take any actions with respect to Stoddard's trust before he became deputy assessor? Does the record? The record doesn't reflect any of that. I think that the acts being complained of don't, that's not the linchpin. I think the actions being complained of, at least as I'm asking the court to apply the law, is the process they went through to bring Becker on board and how that occurred. Because when they brought him on board and they accepted his bid, clearly he was an independent contractor. And then after they started and taxpayers started complaining and asking questions, they slipped him to a deputy assessor after the fact. That's true. That's not contested. And she was involved in that. So from that moment on, the assessor said, you've got to do a 1099, you've got to do an oath of office, and he did all of that. To the extent she did all of that, after he was hired and started, then eventually at some point in time there was the trigger of an oath of office and switch you to a W-2. The record doesn't lay out whether she's the one that required that or accepted. She certainly participated in that. But I think the record is clear. That's her obligation as the assessor. I mean, who else would give the oath of office? True, she did. But I think the record too, ma'am, is important, is that when people started asking for the records of Mr. Becker, she started saying that those are his trade secrets and he's an independent contractor and you can't have those and we can't turn them over because they don't belong to the county. So again, you're going to see... Well, that's a different issue, isn't it? With whether county funds are being used and the information that's generated is public information or private. That's a whole different issue to me. You have a period of time that you're arguing about, if I understand this correctly. It's a very short period of time. Get the bids, hire Mr. Becker, and then he becomes a 1099 employee. He did. So you have this very short window where you're complaining that they violated a statute. I say they're violating the statute as implied by Ashton because, again, I think if you read the court... But for what period of time? I don't think the period of time is the question, ma'am. I would ask you to consider that the timing is the process of which they brought this gentleman on board to perform a task. So from the time they accepted his bid and brought him in, I think the court in its analysis can stop right there. What happened after that, I don't know is even directly on point. It's the process they went to go out and use... Again, they engaged a private contractor. They didn't switch to a public employee. That's okay. But they engaged and hired a private contractor to perform the statutorily prescribed duties of the assessor. That's where Ashley B. Cook says you can't do that. You as a legislative body can't go out and say, well, the assessor, we want somebody else to do this work. No, no. That's not what that case says. That case says you can't abdicate your responsibilities to that. Right? When the constitutional laws of the state create an office, prescribe its duties, and fix its compensation, no board, except by actions of the legislature, has the authority to contract with private individuals to expend public funds for the purpose of performing the duties which were imposed upon the officer. There's no contract here. I would suggest there was. They took a bid. He solicited bids. He gave a bid. The record shows they accepted the bid. Did they pay the bid? They started paying him the quarterly payments. Do we know that they paid the bid without a contract? They started making the quarterly payments to him which were in the bid. That's in the record, too. His actual bid says so much a quarter. They started making those payments to him so much a quarter. Then there was this concern that got raised. Let's call it six months. I don't think the time is relevant. Now we're under a W-2. Now they started making the same payments through a W-2 structure and not through the 1099. At the beginning, the payments were consistent with the bid. As a matter of contract principles, I'm pretty sure we've got raw and solid ground there. Okay. What is the harm? What is the relief that you're seeking? Again, through the declaratory judgment action is to establish the rights and obligations of the parties, which is what a debt action can do, to say that this board exceeded its authority by privately contracting with this gentleman to do the assessments of the job. I understand the theory. What's the harm and the relief? The harm is, again, the relief is merely to declare the rights of the parties to say it was wrong. We're not asking for money. No injury? Where's ... How do we grant ... How does the court grant relief in this case? The court's granting relief would agree with our request in the debt action to say ... But there's no more controversy. That was going to be my question. Whatever controversy may have existed at some point in time, at the time the court was being asked to act, what was the controversy as of that day? He was a deputy assessor. What's the ... Was a deputy assessor. What's the controversy? Okay, they did something wrong eight months ago. We want you to tell them that eight months ago they did something wrong. Is that appropriate in a declaratory judgment action? Yeah, no, it is, yes. Even though they fixed it? Well, we fixed it after the fact. Yeah. But again, we're complaining of the whole process. To say yes, hypothetically, sir, let's say you agree. You voted the law. You exceeded your authority. You hired a private contractor to do a public servant's job. That's ... To say, well, this court's not going to rule that because after they figured out they broke the law, they made him an employee and a deputy assessor, so it kind of cured the problem. That vitiates our ability to say you still broke the law. Well, but a court of review must, and even the trial court, must be able to look and there must be a controversy at the time of the action, of the DEC action. So, what Justice Clark and myself are wondering about is what was the controversy that existed at the time the DEC action was filed? That distinguishes ... Again, I paused it when I heard the question. I can answer that, but what's the controversy today? The controversy at the time the DEC action was filed, because I would agree with you, there would have to be a case in controversy at the time it was filed. And so, you can ... Analysis could be, and I understand it, there was a controversy when they hired her, hypothetically. Then, for whatever reason, they switched him to a deputy assessor through ... Again, I would suggest to you it was all to sob, because again, they gave him a limbo, sir. They changed the way he was giving his check. I don't believe that in and of itself means that they have remedied the problem that they treated in the first place. What day did you file the DEC action? What year did you file the DEC action? I don't have it in front of me, but it was well after that. He left in 2016 or ... What did he leave? 2021? Correct. He's talking about the time ... I don't know how to prove my case when I brought it down. Isn't it true that ... Maybe I'll put it this way. Isn't it true that he was gone at the time you filed the DEC action? That's correct, ma'am. And so ... They didn't raise those offenses in the trial court. I know, but we have to examine our own ability to grant relief. I understand your point. And I'm having trouble with the same thing Justice Clark is. I don't see the controversy at the time you bring the action. Had it been brought maybe in 2016? Different story, right? I understand your point. I believe the record ... I wasn't involved in that this case was brought ... I don't know if it was brought in the federal court or brought ... I wasn't involved in any of that. Okay. But by the time I brought up the case, I understand the history that you're talking about. Okay. A distinction. I understand the distinction, ma'am. Okay. So at least we agree there is a distinction. There's a distinction to be vetted by the justices. And again, on behalf of my client, I'm arguing that it still didn't relieve and it didn't remedy the ultimate controversy that he's raising and raising this DEC action is that the board exceeded its authority. If this court finds, yeah, you probably did exceed your authority, et cetera, but for these other reasons we're not in a position, I understand your argument. I still think you can get there. I understand what you've said, ma'am. Did we give any significance to the fact that Mr. Stodden is a trustee of the entity that's paying taxes as opposed to a taxpayer? I don't think so. I think that's a good question. I thought I'd get to that more just. I think the landmarks case that the court relied upon when it denied standing twice I think is well-received. Did that case involve a particular statute, though? It did, and we've argued that this case also involves two particular statutes, 200-9-80, 200-3-40, which says that she's the one that's hired to do the assessments. She's the one that gets to hire people, and those statutes were filed. I think maybe you're misinterpreting what I'm saying. That case involved a statute that was assumed to give an individual citizen standing. I don't think this is directly on what the other justices were asking you about, but I still have a question about the standing here, too. How is your plaintiff injured or his status affected by any of this? Understood, and again, to the extent we argued the statutes as discussed, the other status would be, and I would agree with the trial court, that even though he put his property in a trust, he was still the trustee and he was still the one involved, and so that was enough of a taxpayer injury. That's what the judge found, and we're asking you to consider that. But I understand your question, sir. The second thing is, the case you cited, I'm sorry, I forget the name. Ashton v. Cook. Right. That was somewhat distinguishable because that wasn't an abdication of duties of the office. This was the government hiring replacements, not under the supervision of the state attorney's office, wasn't it? Well, I believe that the Ashton court was the constitutional office of the state's attorney, and they hired private attorneys to go do the collection work for the state's attorney. Whether they were under his supervision or not, I don't know if Ashton got into that, but we've argued that Ashton was either a constitutional office or a statutory office, and again, Mr. Becker was doing all of this stuff, and again, I know they gave him the label justice, but again, I think the record is pretty clear that he was doing this work independently. My question to you is, isn't that case distinguishable for that reason that when you say they hired, in that case the county government hired these attorneys to perform work normally within the constitutional role of the state's attorney? Correct. But without the state's attorney's consent or supervision? They said he acquiesced to their hiring. And that state's attorney then sued, saying this was not a valid deputization because it wasn't through their office, correct? It had to do with the collection of, I think, the fees. That they had hired attorneys to perform a function of the state's attorney. Correct. Your argument isn't that, or maybe it is, that an independent contractor as an individual cannot also simultaneously be a valid deputy of a county officer? I think he could. I think if the facts in this case were that the assessor says, I have not enough resources because we just happen to be talking about two assessor's cases back to back and I think Justice Gates recognizes, and I concur, these departments are grossly underfunded. And so here, if she would have went and said, I need you to increase my budget, I'm going to go look for it, I'm going to hire someone, and I'm going to pay them as an independent contractor, I'm going to deputize them, I need you to approve what I'm doing, I need you to increase my budget, we wouldn't be standing here. But what we have, we have a county board who said, we're just going to go do this ourselves, we're going to hire this person, we're going to take care of it, it's not the assessor. She acquiesced. But again, they also acquiesced in Ashton. And this has to do, again, this ultimate question, irrespective of the timing that your justice has brought up, is a question of whether a legislative body can just say, we're going to go do this, your office assessor or state's attorney, you're just going to accept it. I think, overarchingly, that's the bigger issue. Okay. Thank you. Thank you, sir. Is there any other questions? No, thank you. No, thank you for answering my question. All right, you'll have a few moments after your opponent. Thank you, ma'am. Mr. Drinkwine, I know we went over a little bit, so in the event that happens with you, I'll give you the same grace. Thank you, Your Honor. May it please the Court and good morning, counsel. Chris Drinkwine on behalf of the Coles County Board and Mr. Robert Becker. The judgment of the Circuit Court of Coles County must be affirmed based on two undisputed facts. Mr. Stodden does not pay property tax in Coles County and Mr. Becker was a sworn deputy assessor who worked under the direction and control of the supervisor of assessments. Not only was there not a case in controversy when this declaratory judgment action was filed, there never was a case in controversy because that first fact, that Mr. Stodden doesn't pay property taxes in Coles County means that he didn't suffer an injury in fact to a legally recognized interest and therefore lacks standing. The second fact, that Mr. Becker was a sworn deputy assessor distinguishes Ashton v. Cook County because the private attorneys in Ashton were given full authority to independently perform legal services which were the constitutional duty of the Cook County State's Attorney. Whereas Mr. Becker... I just have a question. I apologize. Yes, Your Honor. Let's just take a moment in time. After the formation of the initial contractual relationship between Coles County and Mr. Becker, would you agree that Ashton tends to say... Ashton tends to apply? No, Your Honor, because the county board's and Mr. Becker's position is that he was always a duly appointed deputy assessor. Is that what the record indicates? He was sworn in late. He was. He was sworn in on June 1st, 2016. He was hired in 2015 in May. He did some very minimal work. Whatever he did before he was sworn in would not Ashton apply. Our position... If he was hired to independently do the duty of the supervisor of assessment, he was never hired for that purpose. He was hired to help the supervisor of assessment do commercial property assessments under her direction and control. If he was set loose to do the commercial property assessments on his own and it wasn't under supervisor of assessment, Biddle's direction and control, Ashton would apply because he would have full authority and he'd be usurping her statutory duties just like the private attorneys in Ashton usurped the constitutional duties of the Cook County State's Attorney. So, Your Honor, only if he was hired to independently act would Ashton apply during that period that you asked about. Thank you. In any event, the Coles County Board's position is that he was de facto a deputy assessor prior to being sworn in. So, Ashton is distinguishable because Mr. Becker did not act independently. And the circuit court was entirely correct on the merits in distinguishing Ashton, but the court should not have adjudicated the claim for declaratory judgment in the first place because Mr. Stodden lacks standing, which requires an injury, in fact, to a legally recognized interest. Mr. Stodden has not suffered such an injury as a result of the purported unlawful outsourcing of the supervisor of assessment's duties because he does not pay property taxes in Coles County. Our Supreme Court in the Greer case explained that one who is adversely affected, in fact, by governmental action has standing to challenge its legality and one who is not adversely affected, in fact, lacks standing. Mr. Stodden brought this action as an individual, not as trustee of his property tax-paying trust. He could have sued as a trustee on behalf of the trust because the trust, of course, has a distinct legal existence and can sue and be sued, but he didn't. Had he brought the action as a trustee on behalf of the trust, the property tax-paying trust wouldn't have had standing to bring this declaratory judgment action. Mr. Stodden does not as an individual. He's not a property taxpayer and he's not suffered an injury, in fact, to a legally recognized interest based on the purported unlawful outsourcing of the supervisor of assessments duties. Now, the Supreme Court said that the landmark Illinois... Mr. Stodden... Sorry. Yeah, Mr. Stodden. In his claim, he alleged he was a taxpayer? Did he? I mean... In any event, there's no... I'm trying to figure out what his representation to... And I don't have it in front of me. I'm asking you. What was his representation as far as his status that gave him standing originally? Well, on the north side of the V it's Mr. Stodden as an individual not as a trustee. I don't recall standing here what he alleged in his complaint as far as... Well, isn't it important to know how he represented his interest as opposed to looking at a piece of paper that has his name on it? No, I... I need to know did he represent that he was an individual taxpayer or did he represent that he was a trustee within the body of his pleadings? I don't think he represented within the body of his pleading either way. And we moved that is to say the county board moved to dismiss on standing grounds under 619 motion initially that was rejected and then we brought... What was the affirmative matter under 619? Lack of standing 619-A Okay. 7. And you lost on that. We did. We lost in summary judgment too. Both rulings were incorrect. Because by the time we got to summary judgment the record was clear that Mr. Stodden does not own property in Coles County and does not pay property taxes as an individual. That's right. And he did not sue as the trustee. The trustee is not a part of... The trust is not a part of in this case. He didn't sue as the trustee that's the only way that a trust can sue is through its trustee. I understand and that's why I asked you the question. What was his representation? Did he... Did he say he was representing himself individually or did he... make it clear that he was trustee of certain property? Perhaps... In the complaint, Your Honor, I don't think he mentions the trust. I don't... I'm not looking at it. I'm looking at the judgment. Or the...  I don't believe he mentions... Because that issue was raised... He sued as an individual removed to dismiss because he didn't have standing because he doesn't own property. But I understand what you're saying. How does he characterize himself in the complaint? Standing here I can't answer that question. I know that by summary judgment we established for a fact he doesn't own property in Coles County and he doesn't pay property taxes in Coles County. I'm not suggesting an answer to you but somewhere in the briefs maybe it was Attorney Devorah's briefs or yours it was mentioned that it had been asserted that his interest was that he was a voter in the county and therefore had an interest in how the county complied with their official duties. My recollection is like I say I'm not trying to answer the question for you. Maybe it was just in the brief. Well I think that you're correct under the judgment it says that he pays he represents himself as a trustee in this     judgment. But let's move on because I have a better question than I think we've been trying to get to with Mr. Devor and that is what is the controversy by the time this judgment is brought to the court? There isn't a  But the court considered mootness right? The court considered and rejected mootness and I'm trying to find out why. Well I think the entire thing was always everywhere moot, non-justiciable, lacking standing all those things for all kinds of reasons. The timing aspect of it is one component of the justiciability but we think that the threshold issue is he never had standing in the first place. A tax payer never had standing because he didn't pay taxes. Right. A tax payer has standing in these kinds of cases because when there's an unlawful depletion of the county coffers by some alleged government action that's unlawful they have standing to challenge that because it's the tax payer who's going to be responsible for making up the depletion in the county's coffers. They can certainly do that. They have standing when they're alleging that there's unlawful government activity. But if you're not a tax payer, you don't have that standing. So Mr. Stoughton, because all his property is in trust and he's not paying taxes individually, he's suing as an individual, has no more standing to challenge this than does someone from Douglas County,  as opposed to Coles. So tax paying is wrong. If I may though, the verified complaint in the first line alleges that Mr. Stoughton    I know that he doesn't pay property taxes because that's established in the record and it's undisputed. I don't know that there are any other kind of  I can stand here and speculate that Coles County probably has a sales tax. There's nothing in the record to say that he's ever paid that either. Did you brief the issue of an Illinois land trust and the status of a trustee of an Illinois land trust versus a non-land trust? Did you look at those issues? I did not. Because an Illinois land trust, which is what the court looked at, is a very different creature of law than the kind of trust that we ordinarily think about. So I'm wondering if the fact that the court noted it was an Illinois land trust was briefed by the parties here. It was not briefed by the  The distinction between an Illinois land trust and a regular trust, I'm sure there are many, Your Honor. I don't know what they are standing here. But the only ones that would matter is, and I don't know that this is a distinction, the only distinction that would matter is if they were somehow not independent legal entities that can sue and be sued. And whether there's some distinction in who does the suing and the being sued. Because a regular trust can only be sued, and it can only be sued.      matter. And we were proceeding Well, the court found there was standing for the Illinois land trust to go forward, Mr. Stoddard, because he was the trustee of an Illinois land trust, they allowed him to go forward, that he was an  And that was his choice. We're an unwilling participant in this dispute. It's his party, and he brought it as an individual, not as a trustee. But these are interesting and academic issues of justiciability in their court, because we think it's a threshold issue, and this court should decide that this   issue. But on the merits, the circuit court was entirely correct as  The case goes down to section 3-40C of the Illinois property tax code, which provides that each supervisor of assessments may, with the advice and consent of the county board, appoint necessary deputies. Their compensation to be fixed by the county board and paid by the county. That's exactly what happened in this case. Supervisor of  Biddle appointed Mr. Becker, a deputy assessor, under her direction and control. She did so with the advice and consent of the county board. However, Mr. Becker's  was fixed by the county board and he was paid by the  Mr. Stone's only argument before this court, and we're talking about a lot of other things, but his only argument in front of this court on this appeal is that Ashton B. Cook County is on point in controlling. But Ashton is readily distinguishable. I think we discussed that quite a bit already this morning. But unlike the private attorneys contracted in Ashton to autonomously and independently bring collection actions on behalf of the county of Cook, which is a constitutional duty only of the Cook County State's attorney, Mr. Walker worked under the direction and control of the supervisor of assessments to do one of her statutory duties, not independently, but under her direction and control. And therefore, Ashton B. Cook County is not controlling, it's not on point, and the circuit court was entirely correct for distinguishing the case and entering into the  and the     I mean, I'm not agreeing with that. In fact, in the case of Mr. Walker, in the case of his case, the circuit court was completely on point, and there was no question         case. The statute doesn't say how a deputy assessor has to be paid. I think that he could be paid in any number of ways, and it certainly doesn't say how he's to be treated for tax purposes when reporting his income to the I.R. I've got a serious concern with how you just phrased that.  appointed. There doesn't seem to be any dispute to the fact that whether he was operating with the acquiescence of the I.R.   The  Tax Office        duties. He wasn't formalized until a later date,  honor. June 1st, 2016.  is there a document in front of   later ceremony? A document? Yeah. No. But there is record site 583, common law record 583, his office. That's the first thing he starts coming into the court. No, he was hired May 12th,  That's a very document that shows that. I'm so sorry, because I've got this feeling I'm interrupting, and I'm terribly sorry, but I'm really stuck on this. If your position is a taxpayer has standing because the government taxpayer believes has improperly spent money, and he is entitled to complain of that. How does he lose standing because later the  fixes it, and isn't he entitled to say, on this day the  expended this amount of money improperly, and I want a court to say it was improper. How is that  a controversy? Is there not a  after that date? Is there not a  after that date? Well, I think that the standing issue assumes for purposes of the analysis that there was some illegal activity. It doesn't really matter when the illegal activity happened for standing purposes. He still needs to suffer an injury in fact based on that, and he can only suffer an injury in fact based on that. If I pay taxes and they improperly spent my money on that date. But he didn't pay taxes. That's a tax fix. I think you said he can complain that government monies which he provides was spent improperly. And for that purpose he has a controversy that doesn't cease later because on that date the government spent that money they weren't supposed to  spend it. I'm assuming all those things your honor. I'm taking it out of your argument. At that point in time I suppose that's correct but he's later duly appointed a deputy assessor and it's the county board's position based on the  cited in its brief that everything he did before that he was a de facto deputy assessor. Because he's just waiting on software during that period of  He's not even coming into the courthouse during that period of  And the testimony was that he did some preliminary spreadsheet work on his laptop. He doesn't start coming into the  until June 1st and that's when he's sworn in. That's when he starts working. Seems to me that there's a lot of questions back there. There are but none of them matter for purposes of and the standing thing is Well now you're parsing out what he was doing in response to Justice Clark's question. Well he was hired but he really wasn't working. Because his question was temporal. I needed to focus on I understand but it seems to me that if you have to do that if you have to explain then there's questions of fact involved. Were they were they right for consideration? I don't think there's questions of fact that are mature questions of fact that are in dispute. I don't think Mr. DeVore would disagree with me on the material issues of fact. Hence the cross motions for summary judgment. So you thought it was right for summary judgment as well? The county board yes. The injury in fact is the standing issue. The mootness all those things and we would encourage the court to affirm on every basis supported by the record even those not or incorrectly rejected by the circuit court. But on merits which is the important part Ashton v. Cook County is not controlling for the reasons we discussed. The contract doesn't matter whether the duties arise from the statute the constitution doesn't matter all these things. What does matter is whether Becker was acting independently or not or whether he was assisting the supervisor of assessments with her statutory duties and he was. He was hired to help her with the commercial property assessments. That's part of her duties. He didn't do it independently like the lawyers that were hired in the Ashton case did. And that's the distinction and that's why the circuit court correctly distinguished that case and properly granted summary judgment for the Coles County Board and Mr. Becker. Okay.  I'm sorry. Questions? Thank you. All right. I'm on the snag sometimes. I apologize. No problem Aaron. Thank you. Mr. Drinkwood, thank you for your arguments. Last time I was really reluctant to ask questions. Thank you. All right. Mr. DeVore. I always look forward to Justice Gates just put your hand up and tell me just quick topics. You're going to ask me some questions. I got a couple of things that I think will help because I think that's what the judge and the trial court did on the case and controversy justice. He said on the date they hired May 12th and they accepted the bid. That's the case and controversy that they can't wait a year and try to fluff up. I have Mr. Becker's bid put up here and I think it's important. It's in the record. They accepted his bid on May 12th, 2015. He shall start his commission on August 15th, 2015. His first payment is due according to his terms. He shall start his commission. That means he's going to start working on August 15th. Is that a commission to be an assessor? A deputy assessor? I propose to develop a credible valuation model using mass appraisal. Nowhere in his bid does he say I'm accepting the employee as a deputy assessor. The words deputy assessor don't come up. And what citations of the record are you using? On the complaint, the attachment to the complaint  I propose to develop a credible valuation model. Nowhere in there does he say, now keep in mind they solicited bids. They didn't solicit bids for a deputy assessor. I think the court's going to appreciate this kind of window dressing of back in June of 16 was for an early payment of $7,187.50. Then in June, he gets his deputy assessor sworn in. I mean, come on. I think we've resolved, I would hope we've  regardless of how you come down, that the  when they hired him, accepted his bid on March 12th of 2015, that is a threshold question. That is right for a decision. You've got the other issues, standing,  I respect you even raised that,  That's right for adjudication. Did they exceed their authority by hiring this guy as an  contractor to do this, to develop this assessment valuation model? It doesn't say in there I'm going to work under the direction. The record also shows, it's interesting, is that he also received additional compensation by helping the Board of  If you're a deputy assessor, working for the assessor, you're not going to negotiate independently with the Board of Review for more money. And then when he was done with this proposal justices, when he did this, he just never showed up again. He's gone. Clearly we know what the essence of the hiring was. As to the standing, and again, I think, my client did, and I think you found it sir, when this was, he put in his mind he was a tax payer. I think the landmark case, and I think the fact that he is the trustee of the trust, gets us past the standing, and again, my client is just looking for you to resolve the case of  that was there on March 12th and say that this board exceeded its authority. It's not an  it's a real controversy that my client's asking for  I have nothing else. To declare the rights and obligations that says that you exceeded your authority and you hired this person, the statute doesn't allow you the board to hire people, she hires people, and then what you did was improper. What would be the effect of that? The effect of that was is if you find that and you return them and send it back, the declaratory judgment action allows for my client to then take supplemental relief if he wanted to under the declaratory judgment. Attorney fees. Huh? Attorney fees. He's not going to file a supplemental action asking for some kind of other additional relief. Whether my client chooses to do that or not, not discussed in great detail, but ultimately this court would just be overturning saying that you got that wrong, they did violate the law on that day, send it back, and my client has options that he may choose to pursue it or not pursue it. Can you fix the problem by swearing in someone who hadn't been sworn in and ratify a payment that might have been questionable? I don't think that can be relayed back and say that corrects the fact that hypothetically sir, on the other hand,       the trial    with the trial court and would say that  controversy on that date is still the question the court is being asked. I think it's Justice Kate's opinion. There seems to be a lot of factual disputes here. I know that's been denied that there's factual disputes, but for example, taking your position, again, I'm doing this out of a recollection, I believe in the case of       was reminded that all the deputies had to be renewed. That was the date. Isn't that an element that might be a  factual dispute? You can consider that, but I think the record itself, back in May 15, if you look at the bid, if you look at the minutes of the county board meeting, et cetera, they were accepting the bid. You won't find the same         doesn't exist in the White House. One more please. It seems to me that part of your argument focused on how this was initiated. You're saying,  if the committee didn't have enough resources, how did they know that? That's I think what he asked. Oh, I'm sorry. But she didn't ask for somebody to be hired. She didn't have the resources which she says in the record to do all these commercial appraisals. She didn't go and say, I need you to increase my budget. I'm going to go find and solicit a deputy assessor and I'm going to bring that deputy assessor and I'm going to move and ask you to appoint them and hire them with consent. They didn't do any of that. I don't think she ever said that. I think if you look through the record and I'm familiar, they called her to task because all of the assessments hadn't been done and all of the local business properties       taxpayers were complaining that they were all under assessed. You've seen injustice. And they asked her, why aren't you doing these? And she was like, I don't have the resources. And the answer wasn't to give her the  The answer was they supplanted her